# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| 1400 FM 1417 LLC, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No.  4:21-cv-00847 |
| | § | Judge Mazzant |
| CERTAINTEED CORPORATION, | § | |
| *Defendant*. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Plaintiff 1400 FM 1417 LLC's Motion to Remand to State Court (Dkt. #4) and Supplemental Motion to Remand (Dkt. #13). The Court, having reviewed the motions and the responses, finds that both motions should be **GRANTED**.

## BACKGROUND

On December 18, 2003, CertainTeed Corporation entered into a long-term lease agreement (the "Lease Agreement") with the State of Texas to lease the commercial property at issue in this lawsuit, 1400 F.M. Rd. 1417, Sherman, Texas 75092 (the "Property"). Following a sale of the Property and assignment of rights, Plaintiff became the owner and lessor of the Property on April 19, 2021.

On September 24, 2021, Plaintiff served Defendant with an eviction notice, claiming that Defendant was in default and in breach of the Lease Agreement. When Defendant refused to vacate, Plaintiff filed a forcible detainer suit (Dkt. #2) (the "Petition") in the Justice of the Peace Court, Precinct 1, Grayson County, Texas, on September 30, 2021. On October 22, 2021, Defendant removed the case to the undersigned Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 (Dkt. #1). Defendant asserts that removal was proper because there is complete diversity

between the parties and the amount in controversy exceeds $75,000.

On November 19, 2021, Plaintiff filed a motion to remand (Dkt. #4), arguing the removal did not properly establish subject matter jurisdiction based on either diversity or a federal question. On December 3, 2021, Defendant filed a response (Dkt. #5). On December 10, 2021, Plaintiff filed a reply (Dkt. #7). On December 17, 2021, Defendant filed a sur-reply (Dkt. #11).

On December 15, 2021, Defendant filed an amended notice of removal to clarify the citizenship of its member entity (Dkt. #10). On December 13, 2021, Plaintiff filed a supplemental motion to remand to address the amended notice of removal (Dkt. #13). On January 4, 2022, Defendant filed a response (Dkt. #14).[1]

## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am*., 511 U.S. 375, 377 (1994)). "Only state court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citing 28 U.S.C. § 1441(a)). "In an action that has been removed to federal court, a district court is required to remand the case to state court if, at any time before final judgment, it determines that it lacks subject matter jurisdiction." *Humphrey v. Tex. Gas Serv*., No. 1:14-CV-485, 2014 WL 12687831, at *2 (E.D. Tex. Dec. 11, 2014) (citations omitted). The Court "must presume that a suit lies outside [its] limited jurisdiction," *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001), and "[a]ny ambiguities are construed against removal and in favor of remand to state court." *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013) (citing *Manguno v. Prudential Prop. & Cas.*

---

[1] The Court also held an informal scheduling conference on February 16, 2022, in which the parties discussed Plaintiff's motion to remand.

*Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002)). "When considering a motion to remand, the removing party bears the burden of showing that federal jurisdiction exists and that removal was proper." *Humphrey*, 2014 WL 12687831, at *2 (quoting *Manguno*, 276 F.3d at 723).

## ANALYSIS

Defendant asserts that removal was proper because there is complete diversity between the parties and the amount in controversy exceeds $75,000. Accordingly, the Court examines whether removal was proper under 28 U.S.C § 1332.

## I.     Complete Diversity

Plaintiff contends Defendant has failed to establish complete diversity of citizenship, making removal improper (Dkt. #4 at p. 20).

Subject matter jurisdiction exists under 28 U.S.C. § 1332 only when there is complete diversity of citizenship between the parties. *Vantage Drilling Co. v. Hsin-Chi Su*, 741 F.3d 535, 537 (5th Cir. 2014). For diversity purposes, an individual is a citizen of the state where he is domiciled. *MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 313–314 (5th Cir. 2019). A corporation is a citizen of the state, or states, of its incorporation and the state where its principal place of business is located. *Id.* The citizenship of a limited liability company is determined by considering the citizenship of all of its members or managers. *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008); *Temple Drilling Co. v. La. Ins. Guar. Ass'n*, 946 F.2d 390, 393 (5th Cir. 1991). The party invoking jurisdiction under § 1332 is responsible for showing that the parties are completely diverse. *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).

### A.  Plaintiff's Citizenship

Defendant alleges that Plaintiff is a citizen of Texas. Plaintiff argues that Defendant

"assumes without evidence" that Plaintiff "is a citizen of Texas for diversity purposes" without "meet[ing] its burden . . . [to] first identify all of [Plaintiff's] members" (Dkt. #4 at p. 21).

The Fifth Circuit requires a removing party to "affirmatively and distinctly allege" the citizenship of the parties in the notice of removal. *Getty Oil Corp. v. Ins. Co. of N.A.*, 841 F.2d 1254, 1259 (5th Cir. 1988). Here, Defendant's notice of removal (Dkt. #1; Dkt. #10) states simply that "Plaintiff . . . is a citizen of Texas." The notice does not identify Plaintiff as a limited liability company, nor identify the citizenship of Plaintiff's members or managers. Thus, Plaintiff is correct that Defendant did not properly allege Plaintiff's citizenship in its notice of removal.

However, while the notice of removal contains a technical defect, Defendant has provided competent evidence in responsive pleadings to support its allegation that Plaintiff is a Texas citizen. *See Hertz Corp. v. Friend*, 559 U.S. 77, 96–97 (2010) ("When challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof."). Defendant's responsive pleadings fully assess the citizenship of Plaintiff as a limited liability company, supported by evidence in the form of business records and state filings.[2] "Statements in a responsive pleading to a motion to remand may [ ] cure jurisdictional defects in the removal petition." *Smith v. Wal-Mart Stores, Inc.*, No. EP-08-CV-085, 2008 WL 11333885, at *2 (W.D. Tex. June 23, 2008); *see also Willingham v. Morgan*, 395 U.S. 402, 408 n.3 (1969) ("This material should have appeared in the petition for removal. However, for purposes of this review it is proper to treat the removal petition as if it had been amended to include the relevant information contained in the later-filed affidavits"), *abrogated on other grounds by Osborn v. Haley*, 549 U.S. 225 (2007); *Vane v. Safety-Kleen Sys., Inc.*, No. 3:21-CV-2171, 2021 WL 6063619, at *3 n.2 (N.D.

---

[2] Plaintiff's Certificate of Formation indicates that Plaintiff was formed as a Texas limited liability company on April 15, 2021, with PF-NTX Industrial I LLC as its sole manager (*see* Dkt. #5, Exhibit 6). PF-NTX Industrial I LLC's Certificate of Formation indicates that it was formed as a Texas limited liability company on April 15, 2021, with three individuals as managers, each manager listing a Texas address.

Tex. Dec. 20, 2021) (collecting cases). Thus, contrary to Plaintiff's argument, Defendant's subsequent filings contain competent evidence to remedy the defect in the notice of removal.

Further, "the Fifth Circuit [has] approved removal where defendants 'asserted on information and belief that all [ ] plaintiffs were citizens of Texas' and where the plaintiffs 'failed to demonstrate that this was incorrect.'" *Hise Real Est. Invs., LP v. Great Lakes Ins. SE*, No. 4:20-CV-820, 2021 WL 217264, at *2 (E.D. Tex. Jan 21, 2021) (quoting *Volentine v. Bechtel, Inc.*, 209 F.3d 719, 2000 WL 284022, at *2 (5th Cir. Feb. 9, 2000) (unpub. op.)). Plaintiff does not challenge that it is a Texas citizen or demonstrate that it has members Defendant failed to identify; in fact, Plaintiff "admits it is a citizen of Texas" for diversity purposes (Dkt. #7 at p. 4).

Consequently, the Court finds Defendant has met its burden to allege Plaintiff's citizenship for diversity purposes. Defendant has alleged that Plaintiff is a citizen of Texas. Plaintiff is a limited liability company, so its citizenship is based on the citizenship of its members. *Harvey*, 542 F.3d at 1080. Defendant submitted records from the Texas Secretary of State indicating that Plaintiff's sole manager-member is PF-NTX Industrial I LLC (*see* Dkt. #5, Exhibit 6). PF-NTX Industrial I LLC has three individual managers, all alleged to be domiciliaries of Texas. Thus, PF-NTX Industrial I LLC is a citizen of Texas. Because Plaintiff's sole manager-member is a citizen of Texas, Plaintiff is also a citizen of Texas for diversity purposes.

Having determined the citizenship of Plaintiff, the Court will now assess the citizenship of Defendant.

### B. Defendant's Citizenship

#### 1. CertainTeed's Entity Status

Before determining Defendant's citizenship, the Court must resolve a dispute between the parties regarding Defendant's correct name and entity form. The company named in the Petition

and sued as the defendant in this case is "CertainTeed Corporation" (*see* Dkt. #2). Defendant answered as "CertainTeed LLC," insisting that it was improperly named in this suit. Defendant contends that because of a divisive merger, "CertainTeed Corporation no longer exists" (Dkt. #1 at p. 1 n.1), and CertainTeed LLC is the correct real party in interest as the successor to CertainTeed Corporation. Defendant's counsel "informed Plaintiff of its mistake in naming CertainTeed and asked that Plaintiff amend [its] Petition. Plaintiff has implicitly refused to amend and properly name" Defendant as CertainTeed LLC (Dkt. #1 at p. 1 n.1). In response, Plaintiff states that "CertainTeed Corporation is the signatory and lessee to the subject lease and Defendant has failed to produce any evidence of an assignment or transfer to the contrary" (Dkt. #4 at p. 6 n.2). Plaintiff also contends that "CertainTeed Corporation is a registered and active entity" in Texas, so Plaintiff maintains both that it "sued the proper party" and that Defendant is a Texas citizen (Dkt. #4 at p. 6 n.2).

While CertainTeed Corporation was the entity named as defendant in Plaintiff's Petition, contrary to Plaintiff's assertion, CertainTeed Corporation no longer existed as an entity at that time. Prior to 2019, CertainTeed Corporation was an active entity incorporated in Delaware with its principal place of business in Pennsylvania. But, in October of 2019, CertainTeed Corporation underwent a corporate restructuring, which included a Texas state law "divisive merger."[3] Chapter 10, Subchapter A of the Texas Business Organizations Code permits an existing entity to divide itself by merger into two or more new entities. *See* TEX. BUS. ORGS. CODE § 10.001, *et seq.* "When a merger takes effect, the separate existence of each domestic entity that is a party to the merger, other than a surviving or new domestic entity, ceases." *Id.* at § 10.008(a)(1). If the merger does

---

[3] While the term "divisive merger" does not appear in the Texas Business Organizations Code, federal bankruptcy courts interpreting Texas law have used the term to refer to the "two-step" merger process CertainTeed Corporation implemented here. *See, e.g., In re DBMP LLC*, No. 20-30080, 2021 WL 3552350, at *1 (Bankr. W.D.N.C. Aug. 11, 2021); *In re Bestwall LLC*, 606 B.R. 243, 248 (Bankr. W.D.N.C. July 29, 2019).

not provide for the survival of the dividing entity, "all liabilities and obligations" of the dividing entity automatically "are allocated to one or more of the . . . new organizations in the manner provided by the plan of merger." *Id.* at § 10.008(a)(3).

On October 22, 2019, CertainTeed Corporation (the "Old CertainTeed") was converted from a Delaware corporation to a Delaware limited liability company (*see* Dkt. #5, Exhibit 3 at pp. 6–9). Then, on October 23, 2019, at 9:00 a.m., Old CertainTeed converted from a Delaware limited liability company to a Texas limited liability company. At 9:30 a.m., Old CertainTeed effected a divisional merger under Chapter 10, Subchapter A of the Texas Business Organizations Code. Old CertainTeed was thus split into two Texas limited liability companies—CertainTeed LLC (the "New CertainTeed") and DBMP LLC. As a result of the merger, Old CertainTeed—the former Delaware corporation named in the Petition—ceased to exist, and New CertainTeed was named as its successor-in-interest on all assets and liabilities unrelated to asbestos litigation.[4] At 10:00 a.m., New CertainTeed converted to a Delaware limited liability company. In total, New CertainTeed was a Texas entity for less than a day.

Due to the change in Defendant's entity form resulting from a merger, the Court must determine whether the dividing corporation or the surviving limited liability company ought to determine Defendant's citizenship under § 1332. "In general, where there has been a merger of corporations, the citizenship of the surviving corporation is controlling for diversity purposes." *Rosenbrock v. Deutsche Lufthansa, A.G., Inc.*, No. 6:16-CV-0003, 2016 WL 2756589, at *7 (S.D. Tex. May 9, 2016) (internal citations omitted); *see also Exxon Corp. v. Duval Cnty. Ranch Co.*,

---

[4] DBMP LLC "became solely responsible for the asbestos-related liabilities of Old [CertainTeed]" (Dkt. #4, Exhibit 3 ¶ 10). New CertainTeed "received all other assets of Old [CertainTeed] and became solely responsible for all other liabilities of Old [CertainTeed]" (Dkt. #4, Exhibit 3 ¶ 10). Thus, New CertainTeed implicitly became the successor-in-interest on the underlying lease in this case. To be sure, as part of the divisive merger, "the rights and obligations of the former CertainTeed Corporation under the Lease Agreement were assigned to CertainTeed LLC. As a result, CertainTeed LLC is the current lessee of the Premises" (Dkt. #5, Exhibit 1 at ¶ 7). Whether this assignment was proper or in breach of the Lease Agreement is irrelevant for this Court's diversity analysis.

406 F. Supp. 1367, 1368 (S.D. Tex. 1975). A court may still consider the citizenship of the merging corporation if it is unclear that a complete and effective merger has occurred. *Id.* (citing *Miller v. Gibraltar Sav. Ass'n*, No. G-05-328, 2005 WL 1719702, at *2 (S.D. Tex. July 22, 2005)). Here, it is clear that an effective merger occurred. The "Certificate of Divisional Merger" issued by the Texas Secretary of State on October 23, 2019, clearly indicates that a complete merger occurred, stating that Old CertainTeed Corporation did "not survive the Divisional Merger" (Dkt. #5, Exhibit 4 at p. 13). Because Old CertainTeed Corporation ceased to exist after the merger, the Court will consider only the citizenship of its surviving successor-in-interest, New CertainTeed LLC, for the purpose of determining Defendant's citizenship under § 1332.

As stated, following the Texas divisive merger, Defendant converted from a Texas limited liability company to a Delaware limited liability company. Thus, at the time of removal, Defendant was a Delaware limited liability company. *See Louisiana v. Am. Nat'l Prop. Cas. Co.*, 746 F.3d 633, 636 (5th Cir. 2014) (citizenship of the parties is based on the facts as they existed at the time of removal). Defendant alleges that the sole member of New CertainTeed LLC is CertainTeed Holding Corporation (Dkt. #5 at pp. 7–8). Defendant further alleges that CertainTeed Holding Corporation is incorporated in Delaware and has its principal place of business in Pennsylvania. Therefore, because CertainTeed Holding Corporation is a citizen of Delaware and Pennsylvania for diversity purposes, Defendant is also a citizen of Delaware and Pennsylvania.

While the Court is satisfied that Defendant has met its burden of proving its citizenship, the Court still finds it necessary to address the effect of Plaintiff's disagreement as to the proper defendant in this case as removal by an unnamed defendant can impact a court's jurisdiction.

### 2. The Effect of Misnomer on Removal

Section 1441(a) gives the power to remove only to defendants: "[A]ny civil action brought

in a State court of which the district courts of the United States have original jurisdiction, may be removed *by the defendant or the defendants*, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a) (emphasis added). In some situations, courts have relied on this language to find remand mandatory where an entity not named as a defendant removes, claiming to be the real party in interest. *See, e.g., Salazar v. Allstate Tex. Lloyd's Inc.*, 455 F.3d 571 (5th Cir. 2006); *De Jongh v. State Farm Lloyds, Inc.*, 555 F. App'x 435 (5th Cir. 2014); *Valencia v. Allstate Texas Lloyd's*, 976 F.3d 593 (5th Cir. 2020).

For example, in *De Jongh*, a Texas citizen sued State Farm Lloyd's, Inc., a Texas entity, in Texas state court. 555 F. App'x at 436. A separate and diverse entity, State Farm Lloyds (as opposed to State Farm Lloyd's, Inc.) answered, "asserting that it had been 'incorrectly named' as [State Farm Lloyds, Inc.]" in the complaint. *Id.* at 436. State Farm Lloyds then "removed the case to federal court on the basis of diversity jurisdiction." *Id.* The plaintiff maintained that she had sued the correct entity and that the district court therefore lacked subject matter jurisdiction as the parties properly involved in the suit were both Texas citizens. On appeal, the Fifth Circuit ordered the case be remanded to state court, finding that "State Farm [Lloyds] never properly became a defendant and therefore lacked the authority to remove this action to federal court; moreover, the district court lacked subject matter jurisdiction because each of the proper parties in this action . . . are Texas residents." *Id.* at 438–39.

In *De Jongh*, the error fatal to jurisdiction in the plaintiff's petition was one of misidentification. "[A] misidentification 'arises when two separate legal entities actually exist and a plaintiff mistakenly sues the entity with a name similar to that of the correct entity.'" *Valencia*, 976 F.3d at 597 (citing *Chilkewitz v. Hyson*, 22 S.W.3d 825, 828 (Tex. 1999)). Where a plaintiff

sues the wrong legal entity by error of misidentification, courts have held that the intervening third-party has no right to remove the case. *See De Jongh*, 555 F. App'x at 438 n. 4; *Valencia*, 976 F.3d at 597; *Griffin v. Walmart, Inc.*, No. 3:18-CV-0430, 2018 WL 2389750, at *2 n.3 (N.D. Tex. May 25, 2018). In comparison, an error by "misnomer exists when a plaintiff sues the correct entity under a mistaken name." *Valencia*, 976 F.3d at 597 (quoting *Chilkewitz*, 22 S.W.3d at 828). Where a plaintiff sues the wrong legal entity by error of misnomer, courts have deemed the mistake a procedural defect that does not alone destroy a court's diversity jurisdiction, and denied remand on that ground. *See, e.g., Lefort v. Entergy Corp.*, No. 15-1245, 2015 WL 4937906, at *3–4 (E.D. La. Aug. 18, 2015) (entity "Associated Electric & Gas Insurance Services, Ltd." misnamed as "AEGIS Insurance Services, Ltd."); *Richard v. USAA Cas. Ins. Co.*, No. 17-00175, 2017 WL 8944429, at *2 (M.D. La. Nov. 30, 2017). The latter is applicable here. It is clear from the pleadings that Plaintiff intended to sue the entity—regardless of its entity form—that is lessee of the Property.[5] So, while New CertainTeed LLC has not moved to intervene or otherwise be added as a defendant in this case, the misnomer of its entity form on the face of the Petition does not require remand.

Additionally, removal in this case differs from *De Jongh* where a diverse third-party attempted to create subject matter jurisdiction by substituting itself for a non-diverse defendant. 555 F. App'x at 436. Here, New CertainTeed LLC and Old CertainTeed Corporation are not two separately existing entities with differing citizenships. *Cf. Griffin*, 2018 WL 2389750, at *2 n.3. Rather, as discussed, New CertainTeed LLC is the successor-in-interest of Old CertainTeed Corporation. Old CertainTeed Corporation no longer existed as an entity that could sue or be sued

---

[5] In forcible detainer suits where a landlord-tenant agreement forms the basis of the parties' rights, the proper defendant is generally the tenant or lessee of the property in question. *See Anderson v. Chandler*, No. 12-16-00299, 2017 WL 2829329, *3 (Tex. App.—Tyler June 30, 2017) (internal citations omitted) ("In most situations, the parties in a forcible detainer suit are in a landlord-tenant relationship.").

at the time this case was filed and removed.[6] *See generally Chemguard Ltd. v. Dynax Corp.*, No. 4:09-CV-524, 2010 WL 11619571, at *2 (N.D. Tex. Apr. 1, 2010) (recognizing that under Texas law, "civil suits may be maintained only by or against parties having an actual or legal existence") (citations omitted); *Kingman Holdings, L.L.C. v. Chase Home Fin., L.L.C.*, No. 5:15-CV-019, 2015 WL 13802564, at *2 (W.D. Tex. Apr. 20, 2015) ("A named party whose existence has been terminated by merger is not a proper party") (citations omitted).

In sum, while Plaintiff may contest whether Defendant as New CertainTeed LLC is the proper lessee under the terms of the Lease Agreement, it is clear that New CertainTeed LLC is the proper entity to evaluate Defendant's citizenship for diversity purposes, and the misnomer as to Defendant's entity form on the face of the Petition does not change this conclusion or divest this Court of jurisdiction.[7] Defendant has shown with competent evidence that it is a citizen of Delaware and Pennsylvania, and that Plaintiff is a citizen of Texas. Accordingly, the Court finds that Defendant has sufficiently alleged that complete diversity exists as no defendant shares the same citizenship as Plaintiff. *MidCap Media Fin.*, 929 F.3d at 314.

The Court will now assess whether Defendant has proved the second requirement for jurisdiction under § 1332—that the amount in controversy exceed $75,000.

---

[6] District courts outside of this Circuit that have analyzed an entity's conversion under Delaware law further support the conclusion that New CertainTeed LLC is the only proper party-in-interest with the ability to defend and remove this case. *See, e.g., Johnson v. SmithKline Beecham Corp.*, 853 F. Supp. 2d 487, 496 (E.D. Pa. 2012) (entity that converted to LLC under Delaware law was real party in interest that consented to removal because no separate entity existed with an interest in litigation at the time of removal), *aff'd*, 724 F.3d 337 (3d Cir. 2013); *Purina Mills, L.L.C. v. Less*, 295 F. Supp. 2d 1017, 1027–28 (N.D. Iowa 2003) (while underlying agreement was made with Purina Mills, Inc., entity had converted to Purina Mills, L.L.C. under Delaware law, and thus Purina Mills, L.L.C. was the only proper party in interest that could bring a claim under the agreement).

[7] Even if the Court is incorrect, complete diversity would exist with respect to the parties as-named in Plaintiff's Petition. When it existed, Old CertainTeed Corporation was a citizen of Delaware and Pennsylvania because it was incorporated in Delaware with its principal place of business in Pennsylvania. *Midcap Media Fin.*, 929 F.3d at 314. Therefore, unlike the parties in *De Jongh*, complete diversity would exist even without the clarification as to Defendant's now LLC status. Accordingly, "because the originally named parties were completely diverse, allowing a diverse party alleging its status as the real party in interest to join the notice of removal is not an attempt to create removal jurisdiction where none previously existed." *Fagan v. Thomas*, No. 19-12451, 2019 WL 6683848, at *3 (E.D. La. Dec. 6, 2019).

## II.     Amount in Controversy

Plaintiff contends Defendant has failed to establish that the amount in controversy exceeds $75,000 (Dkt. #4 at p. 15).

The amount in controversy is normally determined by the amount sought on the face of a plaintiff's petition. 28 U.S.C. § 1446(c)(2); *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 86–87 (2014) (citation omitted); *St. Paul Reins. Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998). "If a specific amount was demanded, the amount stated in the [petition] is dispositive if it is apparently made in good faith." *Hamilton v. Mike Bloomberg 2020, Inc.*, No. 21-10576, 2021 WL 5272218, at *1 (5th Cir. Nov. 11, 2021) (internal citations omitted). If a plaintiff does not state an amount in the petition, the defendant must prove by a preponderance of the evidence that "the amount in controversy exceeds the jurisdictional amount," and may rely on "summary judgment-type evidence" to do so. *St. Paul Reins.*, 134 F.3d at 1253.

Here, Plaintiff has not stated a specific amount of damages in the Petition. Therefore, Defendant bears the burden of establishing "by a preponderance of the evidence that the amount in controversy exceeds [$75,000]." *Id.* at 1253.

The preponderance burden requires a court to determine "whether it is more likely than not that the amount of the claim will exceed [the jurisdictional amount]." *Id.* at 1253 n.13. In doing so, the court "must presume that a suit lies outside [its] limited jurisdiction," *Howery*, 243 F.3d at 916, and construe "[a]ny ambiguities . . . against removal and in favor of remand to state court." *Mumfrey*, 719 F.3d at 397 (citing *Manguno*, 276 F.3d at 723); *see also Valencia*, 976 at 595 ("Because removal raises significant federalism concerns, the removal statute is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand.").

Before the Court can determine the amount in controversy, the Court must resolve a

disagreement between the parties regarding the nature of the claims brought in Plaintiff's Petition.

### A. The True Nature of Plaintiff's Claims

The parties agree that Plaintiff has brought a claim for forcible detainer to recover possession of the Property. The parties dispute, however, whether Plaintiff has also sued for breach of contract and related damages. Plaintiff claims that the Court's amount in controversy analysis should only consider a claim for forcible detainer because Plaintiff is seeking "only an eviction" and not compensation for any "damages and/or repairs" resulting from a breach of the Lease Agreement (Dkt. #4 at pp. 16, 19). On the other hand, Defendant contends that the Petition requests contractual damages related to Defendant's alleged failure to cure defective property conditions (Dkt. #5 at p. 15). Accordingly, Defendant argues that the Court should consider breach of contract damages in calculating the amount in controversy. Considering the Petition in the context of a Texas forcible detainer action, the Court finds that the Petition does not assert an independent claim for breach of contract.

"[I]n the typical diversity case, the plaintiff is the master of his complaint." *Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995). The amount in controversy is thus determined by the claims and requested relief brought in the plaintiff's petition. *Hannah v. Allstate Texas Lloyd's*, No. EP-11-CV-269, 2011 WL 5325257, at *2 (W.D. Tex. Nov. 2, 2011). "Determining the amount in controversy based on the types of damages sought is a fact-specific inquiry," *Id.* at *3, and requires a court to undertake an evaluation of the true nature of the plaintiff's claims. *Everhart v. JPMorgan Chase Bank*, No. 4:13-CV-031, 2013 WL 469367, at *2 (N.D. Tex. Feb. 6, 2013).

Here, the Petition does facially include a claim for breach of contract (*see* Dkt. #2 at p. 9). However, an examination of the nature of Plaintiff's case as well as the surrounding facts

demonstrate that Plaintiff is not actually suing for breach of contract or seeking to recover any related damages. Rather, pleading that Defendant, a tenant, breached the Lease Agreement was raised merely to justify Plaintiff's request for a forcible detainer, not as a separate cause of action. To start, the Petition is entitled "Landlord's Original Petition for Forcible Detainer" (Dkt. #2 at p. 1). In the introductory paragraph, Plaintiff states it filed for forcible detainer because of Defendant's "defaults and failure to cure defaults under the terms under a commercial lease" (Dkt. #2 at p. 1). The background of the case continues that because Defendant "breached the Lease and failed to comply with the Eviction Notice . . . [Plaintiff] is [ ] entitled to recover possession of the Property, in addition to recovering an award of all reasonable and necessary attorneys' fees" (Dkt. #2 at p. 9). Further, at the end of the Petition, Plaintiff's prayer does not contain a request for damages resulting from Defendant's alleged breach. Rather, the prayer contains the following requests:

     A. Declare that Lessee's failure to properly maintain and repair the Property resulted in a default under the Lease and, by extension, Lessee's right to possession of the Property;
     B. Find Lessee guilty of forcible detainer and enter an Order that entitles Lessor to recover possession of the Property;
     C. Enter a judgment and all writs necessary for awarding possession of the Property to Lessor;
     D. Award Lessor its reasonable attorneys' fees and costs of court, which will be proven at trial; and
     E. Grant Lessor such other and further relief, at law or in equity, to which he may be entitled.

(Dkt. #2 at p. 12). Plaintiff's requested relief is entirely declaratory and injunctive in nature and relates solely to an action for forcible detainer.

     Lastly, Plaintiff unequivocally represented to the Court that it is seeking no remedy or relief related to any breach of contract claim: by way of a declaration from its CEO, Plaintiff declared that "[t]his lawsuit was necessary to enforce [Plaintiff's] right to possession of the Property" and

14

Plaintiff "does not currently seek damages for [Defendant's] rental obligations" (Dkt. #4, Exhibit 5 at ¶ 15). Plaintiff then declares "it is solely seeking possession of the Property at this time" (Dkt. #4, Exhibit 5 at ¶ 15). Defendant has not alleged that Plaintiff made these representations in bad faith. Thus, while Plaintiff's Petition does reference a claim for breach of contract, the Court finds this claim is merely ancillary to Plaintiff's claim for forcible detainer.

Such a conclusion is further supported by examining the Texas pleading requirements for forcible detainer. To bring a claim for forcible detainer, the petition must assert a legitimate ground for eviction. *See* TEX. R. CIV. P. 510.3(a)(2) (a petition in an eviction case must contain "a description of the facts and the grounds for eviction"). In the Grayson County Justice Court, the options a claimant may choose from are non-payment of rent, holding over, or "non-rent default by (describe default)." [8] Here, Plaintiff requested an eviction based on a non-rent default—that Defendant had defaulted, and thus was in breach of the Lease Agreement because Defendant allegedly failed to maintain the Property as required by the terms of the Lease (Dkt. #2 at p. 1). The breach of contract claim in the Petition, therefore, serves as a description of a non-rent default as required to bring a claim for forcible detainer on this ground.[9]

Moreover, a forcible detainer action in a justice court is not a proceeding in which a breach of contract dispute could be resolved. *Fed Nat'l Morg. Ass'n v. Morse*, No. 4:16-CV-00396, 2016 WL 11474078, at *2 (E.D. Tex. Sept. 29, 2016) (stating that actual possession is the only issue to be adjudicated under a complaint for forcible detainer). Forcible detainer actions under Texas law involve the sole issue of possession. *Id.* Any claims for breach of contract under a lease must be

---

[8] "General Procedures for Filing an Eviction for Non-Payment of Rent," for Justice of the Peace Court, Precinct 1, Grayson County, Texas, at p. 2 (https://www.co.grayson.tx.us/upload/page/0226/docs/JP1EvictionSuitInfo.pdf) (last visited Mar. 23, 2022).

[9] The eviction citation issued by the Justice Court asks whether "in addition to possession of the property, the Plaintiff is seeking" other relief (*see* Dkt. #1, Exhibit 4 at p. 144). The Justice Court noted only that Plaintiff was seeking possession and related attorneys' fees and court costs, and did not describe any other relief requested, which the Court finds persuasive.

pursued through ordinary proceedings, as a claimant could not pursue claims for breach-related damages in a summary forcible detainer proceeding. *See* TEX. R. CIV. P. 510.3(a), (d) (limiting damages in an eviction case to unpaid rent and attorney fees). That is not to say that claims for breach of a lease agreement are irrelevant to a forcible detainer proceeding. As stated, while the justice court is not tasked with determining the damage from or ultimate merits of a breach of a lease agreement, the justice court may assess whether a breach of the lease justifies a forcible detainer relief. *See generally, e.g., Carlson's Hill Cnty. Beverage v. Westinghouse Rd. Joint Venture*, 957 S.W.2d 951, 953 (Tex. App.—Austin 1997) (jury's finding that tenant breached lease agreement was not an independent claim that could be appealed from a forcible detainer proceeding as it was "merely an element of the issue of possession"). A fair reading of Plaintiff's Petition indicates that this was the purpose of including a breach of contract claim in the Petition, not to independently recover for breach of the Lease Agreement as Defendant suggests.

As stated, Defendant, as the removing party, has the burden of proving jurisdiction exists by a preponderance of the evidence. A removing defendant's burden to demonstrate the amount in controversy "concerns what the plaintiff is claiming . . . not whether the plaintiff is likely to win or be awarded everything he seeks." *Robertson v. Exxon Mobil Corp.*, 814 F.3d 236, 240 (5th Cir. 2015) (internal quotations and citations omitted). Considering the unique but limited scope of a forcible detainer action, Defendant has not shown that Plaintiff is actually claiming or seeking to recover for breach of contract independent from Plaintiff's claim for forcible detainer. Consequently, the Court will only consider the noncompensatory relief related to Plaintiff's forcible detainer claim to determine the amount in controversy.[10]

---

[10] As indicated by the prayer (*see* Dkt. #2 at p. 12), the Petition does include a request for attorneys' fees (Dkt. #2 at p. 12). Generally, attorneys' fees are included in the amount in controversy where they are provided for by contract or state statute. *Graham v. Henegar*, 640 F.2d 732, 736 (5th Cir. 1981). Both the Lease Agreement (*see* Dkt. #1, Exhibit 4 at ¶ 17.4) and § 24.006 of the Texas Property Code provide for the prevailing party in a forcible detainer

The Court will now analyze whether the total amount in controversy exceeds the $75,000 jurisdictional requirement.

### B. Forcible Detainer

"Under Texas law, 'the purpose of a forcible entry and detainer action is to provide a party with an immediate legal remedy to obtain possession.'" *Bank of N.Y. Mellon v. Ingram*, No. 1:12-CV-483, 2013 WL 2637995, at *4 (E.D. Tex. June 11, 2013) (citing *Padilla v. NCJ Dev., Inc.*, 218 S.W.3d 811, 814 (Tex. App.—El Paso 2007, pet dism'd w.o.j.)); *see also* TEX. R. CIV. P. 510.3 (stating the only issue a court must adjudicate in an eviction case is "the right to actual possession and not title"). As an action seeking equitable relief, "it is well established that the amount in controversy is measured by the value of the object of the litigation." *Farkas v. GMAC Mortg., L.L.C.*, 737 F.3d 338, 341 (5th Cir. 2013). The object of the litigation is "the value of the right to be protected or the extent of the injury to be prevented." *St. Paul Reins.*, 134 F.3d at 1253. In a forcible detainer suit, the right a plaintiff enforces "is not the value of the [p]roperty itself, but rather the value of the right to occupy or possess the property." *Fed. Nat'l Mortg. Ass'n v. Loving*, No. 3:11-CV-00464, 2011 WL 2517267, at *4 (N.D. Tex. June 23, 2011).

The parties raise two issues concerning the amount in controversy requirement. First, the parties disagree on whether the Court should consider the value to Defendant in possessing the Property in calculating the amount in controversy. Second, the parties disagree on what method the Court should use to calculate the amount in controversy. The Court will address each issue, in turn.

---

suit to recover attorneys' fees. However, neither party provided the Court with an amount of attorneys' fees incurred to date, or a reasonable estimate of expected attorneys' fees. *See, e.g., Bank of N.Y. Mellon v. Maniscalco*, No. 1:15-CV-35, 2015 WL 11170152, at *1–2 (E.D. Tex. Sept. 18, 2015) (attorneys' fees included in amount in controversy determination where parties submitted declarations and other evidence establishing reasonable attorneys' fees). Thus, the Court lacks the information necessary to include Plaintiff's request for attorneys' fees in the amount in controversy calculation.

### 1. The Amount in Controversy is Calculated from the Plaintiff's Perspective

In support of federal jurisdiction, Defendant argues that the Court should measure the amount in controversy from Defendant's viewpoint, rather than from the sole perspective of Plaintiff (Dkt. #1 at p. 5). Should the Court do so, Defendant argues that the amount in controversy requirement is met. Plaintiff responds that the amount in controversy requirement cannot be measured based on any injury or potential loss to Defendant (Dkt. #7 at pp. 7–8).

While the Court recognizes that other Circuits have considered the defendant's viewpoint in cases where the plaintiff seeks equitable relief, *see BEM v. Anthropologie*, 301 F.3d 548, 553 (7th Cir. 2002), this Court is bound by Fifth Circuit precedent. The Court of Appeals for the Fifth Circuit has expressly rejected methods based on an "either viewpoint" rule where the amount in controversy can be satisfied from the viewpoint of either the plaintiff or the defendant. *See Garcia v. Koch Oil Co.*, 351 F.3d 636, 639–40 (5th Cir. 2003) (applying plaintiff viewpoint rule and declining to apply either viewpoint rule in action for declaratory relief); *Alfonso v. Hillsboro Cnty. Aviation Auth.*, 308 F.2d 724, 727 (5th Cir. 1962) (applying plaintiff viewpoint rule in action for declaratory and injunctive relief). Instead, in actions involving declaratory or injunctive relief, the Fifth Circuit and other courts in our circuit have measured the amount in controversy only by "[t]he value *to the plaintiff* of the right to be enforced or protected." *Alfonso*, 308 F.2d at 727 (emphasis added).[11] Thus, in this Circuit, "a court must examine a claim's amount in controversy from the

---

[11] *See Bank of N.Y. Mellon v. Maniscalco*, No. 1:15-CV-35, 2015 WL 11111369, at *2 (E.D. Tex. May 11, 2015) ("In the Fifth Circuit, this value is strictly determined through the viewpoint of the plaintiff; the defendant's value in defending the action is not considered") (quoting *Dominion Homeowners Ass'n v. Rhema Int'l Found.*, No. SA-13-CA-526, 2013 WL 5592938, at *2 (W.D. Tex. Oct. 10, 2013); *Berry v. Chase Home Fin., LLC*, No. C-09-116, 2009 WL 2868224, at *2 (S.D. Tex. Aug. 27, 2009) ("The amount in controversy is determined from the perspective of the plaintiff, and the proper measure is the benefit to the plaintiff, not the cost to defendant") (citing *Chamber v. Chase Home Fin. LLC*, No. 3:06-CV-695, 2006 WL 3086517, at *3 (N.D. Tex. Oct. 31, 2006)); *Hyatt v. Baker Hughes Holdings, Inc.*, 1:20-CV-01460, 2021 WL 1700404, at *3 (W.D. La. Mar. 2, 2021) ("The Fifth Circuit, and other courts in our circuit, consistently apply the plaintiff-viewpoint rule"); *A-Best Sewer & Drain Serv., Inc. v. A Corp*, No. CV-05-253, 2005 WL 1038419, at *2 (E.D. La. Apr. 22, 2005) ("The Fifth Circuit has consistently followed the plaintiff-viewpoint rule to determine the amount in controversy"); *Jackson Cnty. Airport Auth. v. Igo*, No. 1:05-CV-

perspective of the plaintiff, not the defendant." *Achtschin-DeGraff Trust v. Wells Fargo Bank, N.A.*, 6:11-CV-458, 2011 WL 13220987, at *2 (E.D. Tex. Nov. 23, 2011); *see also In re Jet HomeLoans Ventures, LLC*, No. 3:21-CV-2214, 2021 WL 5908901, at *4 n.5 (N.D. Tex. Dec. 14, 2021) (collecting cases).

Because the Fifth Circuit has continuously applied the "plaintiff viewpoint" rule, that approach applies in this case.

### 2.   Methods of Calculating the Amount in Controversy

While the "plaintiff viewpoint" rule applies in this case, the Court must still decide what method to use to calculate the amount in controversy. The Fifth Circuit has not detailed the method courts should use to calculate the value of possession of property in a forcible detainer action for purposes of the amount-in-controversy analysis. Defendant proposes several different methods for the Court to consider, and surmises that the amount in controversy requirement is met under any of its proposed methods (Dkt. #5 at pp. 9–15). However, as discussed below, Defendant has not met its burden of proving the amount in controversy in this case.

First, Defendant argues that the Court should consider the increase in rental obligations Defendant would have to pay if evicted from the Property. Specifically, Defendant contends that its "monthly rental obligations would increase by at least $158,534.00," and "its annual rental obligations would increase by at least $1,902,408.00" if forced to rent another comparable property in the area (Dkt. #1 at p. 5). Similarly, Defendant claims "it would lose approximately $410,356.00 worth of improvements and assets that it has installed at the [Property]" if evicted (Dkt. #1 at p. 5). Based on these potential losses, Defendant concludes that "the immediate (within thirty-days)

90LG, 2005 WL 1595665, at *3 (S.D. Miss. June 13, 2005) ("[T]his Court . . . is bound by Fifth Circuit precedent which has uniformly applied the 'plaintiff's viewpoint' for determining the value of the amount in controversy for purposes of removal"); *see also* 14AA Wright & Miller, *Federal Practice & Proc*. § 3703 (4d ed. 2021).

value of [Defendant's] right to occupy or possess the [Property] is $568,800.00" (Dkt. #1 at p. 5). However, "[w]hen applying the plaintiff-perspective rule, the court . . . does not consider the costs a defendant incurs in complying with" the equitable relief granted. *Adams v. Nationwide Mut. Ins. Co.*, No. 3:021-CV-1607, 2003 WL 21251734, at \*3 (N.D. Tex. Mar. 28, 2003); *see also Garcia*, 351 F.3d at 639 (holding that potential costs or collateral losses to defendants could not be considered in determining amount in controversy). Thus, evidence of Defendant's potential loss is not relevant to this Court's amount in controversy determination.

Next, Defendant cites to *Ezon v. Cornwall Equities Ltd*, 540 F. Supp. 885, 887 (S.D. Tex. 1982), to argue that the value of possession should be measured by the amount of one year's rent. Defendant has not convinced the Court that *Ezon* would be appropriate to apply to the case at hand.[12] First, when the district court in *Ezon* denied remand, it expressly declined to select a formula to value the amount in controversy and instead based its conclusion on the specific facts before it. *See id.* at 889 ("Without determining how the amount in controversy should be measured in the instant case, the court concludes that the value of the leasehold is not restricted to the three months back rent which plaintiff seeks as actual damages but . . . [is] at least a year as measured by annual rent.").[13] Moreover, *Ezon*'s holding expressly relied on *Sterl v. Sears*, 88 F. Supp. 431, 432 (N.D. Tex. 1950), which Defendant also cites to in arguing that the value of possession should be measured by the amount of rent for the entire lease term. Like *Ezon*, Defendant has not

---

[12] In addition to the opinion in *Ezon* containing minimal analysis or explanation as to how or what factors the court considered in reaching its conclusion, this Court is not bound by the opinions of other district courts within this Circuit. *Camreta v. Greene*, 563 U.S. 692, 701 (2011).

[13] The defendant in *Ezon* also presented the court with evidence of the value of possession of the property to the plaintiff independent from the rental amount in the lease. *Compare Ezon*, 540 F. Supp. at 889 (approximate annual rental amount in lease of $15,000), *with Id.* at n.5 (defendant's representation that annual value of lease to the plaintiff was $85,000). Defendant did not submit such evidence here. It is unclear what impact, if any, this evidence had on the district court's decision in *Ezon*, and thus unclear what the lack of similar evidence should have on this Court's decision.

convinced the Court that *Sterl* is applicable to this case.[14] *Sterl* relied on an "either viewpoint" framework. To be sure, the court explains its holding by stating that "the jurisdictional test of the amount in controversy takes in view the pecuniary result to either party in the suit. It is clear what the defendant has at stake and stands to lose in this suit is to him of a value and worth sufficient to sustain the jurisdiction of the court." *Id*. While this holding may have been appropriate when *Sterl* was published, Defendant has not explained why it should apply here given the Fifth Circuit's rejection of an "either viewpoint" analysis. *Garcia*, 351 F.3d at 639–40. Because Defendant has not convinced the Court that *Ezon* or *Sterl* should apply here, and because any ambiguities must be construed "against removal and in favor of remand," *Mumfrey,* 719 F.3d at 397, the Court is not persuaded to find jurisdiction exists based on either of these cases.

Finally, Defendant contends that the amount in controversy should be measured by the difference between the rent under the Lease Agreement and the current fair market rental value of the Property. Some Louisiana district courts have measured the amount in controversy using "the marginal change in plaintiff's economic position if it obtains possession." *A. Levet Props. P'ship*, No. 03-1708, 2003 WL 21715010, at *7–8 (E.D. La. July 21, 2003). "To do this, the [c]ourt compares the plaintiff's economic position with and without possession," by computing "the difference between the rent paid by the new tenant and that paid by defendant." *Id.* at *3. "Alternatively, if defendant 'were unable to pay rent under the lease, then possession would give [plaintiff] the ability to re-lease the premises to another tenant, and the value of possession would be the rent [plaintiff] could collect from a new tenant.'" *Villenurve v. New River Shopping Ctr.,*

---

[14] The Court also notes that *Sterl*'s continued application was brought into question by *Beneficial Financial v. Smith*, No. 3:14-CV-0123, 2014 WL 764154 (N.D. Tex. Feb. 25, 2014). There, the district court opined that it was not bound by *stare decisis* to follow the holding of *Sterl*, and instead "adopt[ed] and follow[ed] the holdings of . . . other judges in this district . . . that the amount in controversy in a forcible detainer action is the value of the right to occupy or possess the property at issue, not the fair market value of the property . . . regardless of any holding in the *Sterl* case over 60 years ago[.]" *Id.* at *3.

*LLC*, No. 17-303, 2017 WL 5147659, at \*4 (M.D. La. Sept. 14, 2017) (quoting *Wright v. AT&T Mobility, LLC*, No. 13-136, 2013 WL 1558323, at \*3 (E.D. La. Apr. 10, 2013)).

Even assuming this is an acceptable method for evaluating the amount in controversy, Defendant submits no evidence regarding Plaintiff's change in economic position if Plaintiff prevails and obtains possession of the Property. By way of affidavit, Defendant did submit a market study purporting to show current fair market rental values of comparable properties in the area (*see* Dkt. #1, Exhibit 1; Dkt. #5, Exhibit 7). However, Defendant's evidence does not demonstrate the current fair market rental value of the Property at issue here, nor has Defendant made any allegations of what the Property's current rental value may be. Thus, Defendant's evidence is insufficient to support the method proposed by the Louisiana district courts. *Cf.*, *Poplar Avalon, LLC v. Sprintcom, Inc.*, No. 2:16-CV-2393, 2016 WL 3661571, at \*3 (W.D. Tenn. July 5, 2016) (denying remand where defendant used affidavit evidence of current fair market rental amounts for similar properties to effectively prove that amount in lease's fixed rent payment provision represented the fair rental value of the property at issue). Further, Defendant relies on its market study to again argue that it would face a substantial financial burden if evicted from the Property (Dkt. #5 at pp. 13–15). The Louisiana method, however, requires a defendant to make a showing that the plaintiff's economic position would change. *See A. Levet*, 2003 WL 21715010, at \*3. Defendant has made no such showing here.

The only evidence Defendant provides that the Court could use to calculate the amount in controversy is the rental amount contained in the Lease Agreement. *See generally, e.g., Scojo Sols. v. Mitchell*, No. 3:12-CV-3814, 2012 WL 5933056, at \*1 (N.D. Tex. Oct. 31, 2012) (using rental amount in parties' lease agreement as evidence of value of the right of possession where no other evidence was put forth). Under the Lease Agreement, Defendant's monthly rental amount is

$55,170 (Dkt. #1 at p. 4). However, it is unclear whether the rental amount under the Lease Agreement would be an appropriate measure of damages in this case because Plaintiff represents the Lease Agreement was terminated on September 24, 2021—prior to Plaintiff's suit in the Justice Court and prior to removal to this Court (Dkt. #4 at p. 10, ¶ 13). Moreover, Plaintiff is not seeking to recover past unpaid rent or future rent through this action (*see* Dkt. #4, Exhibit 5 at ¶ 15 (declaration of Plaintiff's CEO representing that Plaintiff is not seeking any monetary damages)). To the contrary, if Plaintiff prevails, it recovers no rent payments from Defendant. There is also no evidence before the Court, or even argument from Defendant, that Plaintiff intends to re-lease the Property. Considering the lack of argument and evidentiary support, the Court is not persuaded on the facts of this specific case that the rental amount in the Lease Agreement, without more, is a sufficient representation of the value of possession of the Property as measured from Plaintiff's viewpoint.

In sum, though Defendant has put forth some evidence of what the amount in controversy might be, "[t]he preponderance burden forces the defendant to do more than point to a state law that *might* allow the plaintiff to recover more than what is pled. The defendant must produce evidence that establishes that the actual amount of the claim will exceed [the jurisdictional amount]." *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995) (footnotes omitted). If a defendant fails to establish the requisite jurisdictional amount, the court must remand the case to state court. *In re 1994 Exxon Chem. Fire*, 558 F.3d 378, 388 (5th Cir. 2009). As the removing party, Defendant has failed to meet its "burden of showing that federal jurisdiction exists and that removal was proper." *Manguno*, 276 F.3d at 723. Remand is therefore warranted on the basis that the Court lacks subject matter jurisdiction because Defendant has failed to prove that the amount in controversy exceeds $75,000.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff 1400 FM 1417, LLC's Motion to Remand to State

Court (Dkt. #4) and Supplemental Motion to Remand (Dkt. #13) are **GRANTED**.

The case is hereby remanded to the Justice of the Peace Court, Precinct 1, Grayson County,

Texas, as Cause No. JC-21-0824. This matter is closed on the Court's docket.

**IT IS SO ORDERED.**
**SIGNED this 28th day of March, 2022.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE